**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID P. LYNCH**
Amy Noe Law
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL A. CROUCHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1401-CR-23 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1204-FA-16

**July 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

# CASE SUMMARY

During a period of over four years, Appellant-Defendant Paul A. Croucher engaged in the repeated inappropriate touching of his nephew, S.C. At all times relevant to this appeal, Croucher was over the age of twenty-one and S.C. was under the age of twelve. Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Croucher with Class A felony child molesting and Class C felony child molesting. Following a three-day trial, the jury found Croucher guilty as charged. The trial court subsequently imposed an aggregate forty-year sentence and determined that Croucher qualified as a credit restricted felon.

On appeal, Croucher raises three issues which we restate as follows: (1) whether the trial court abused its discretion in admitting certain evidence at trial, (2) whether the deputy prosecutor committed prosecutorial misconduct, and (3) whether the trial court abused its discretion in determining that Croucher qualifies as a credit restricted felon. Concluding that the trial court did not abuse its discretion in admitting the challenged evidence, Croucher failed to establish that the deputy prosecutor committed prosecutorial misconduct, and the trial court abused its discretion in determining that Croucher qualifies as a credit restricted felon, we affirm in part, reverse in part, and remand the matter to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

S.C. was born on May 17, 1999. S.C. and his siblings began living with Croucher, their uncle, after their father died in August of 2007. At the time, Croucher was living in Connersville with his business partner.

Following the conclusion of the spring semester of the school year, Croucher, S.C., and S.C.'s siblings moved to Richmond. The children lived with Croucher in Richmond until January of 2012. The sleeping arrangements at the home in Richmond consisted of S.C.'s siblings sleeping in upstairs bedrooms and S.C. sleeping in a downstairs bedroom with Croucher.

Croucher began touching S.C. inappropriately when S.C. was seven or eight years old. The inappropriate touching began occurring on a repetitive basis at some point after August of 2007, but before January of 2008. During the instances of inappropriate touching, S.C. would usually awake to find Croucher unbuckling his pants. Croucher would often place S.C.'s penis in his mouth or place his mouth on S.C.'s genitals. In addition to putting his mouth on S.C.'s genitals, Croucher would sometimes rub S.C.'s genital area, the outside of S.C.'s thigh, and S.C.'s back and buttocks. After he finished touching S.C., Croucher would occasionally masturbate. Croucher's actions continued on at least a monthly basis for a period of more than four years. Croucher placed S.C.'s penis in his mouth "most of" the times that his inappropriate touching of S.C. occurred. Tr. p. 251. Croucher last touched S.C. inappropriately in "the latter part of 2011." Tr. p. 255.

After remaining silent about Croucher's actions for approximately four years, S.C. decided to report Croucher in January of 2012, after he became aware that another person had levied molestation allegations against Croucher. S.C. first told his brother about Croucher's actions. S.C.'s brother contacted the police. S.C. then recounted the inappropriate touchings inflicted by Croucher for investigating officials with the Richmond

Police Department and the Department of Child Services. S.C. subsequently indicated that he did not report Croucher's actions before this time because he was "afraid of going to foster care." Tr. p. 256. S.C. indicated that he feared going to foster care because Croucher had suggested that if S.C. reported Croucher's actions, S.C. would "probably have to be split up" from his siblings. Tr. p. 256.

On April 18, 2012, the State charged Croucher with Class A felony child molesting and Class C felony child molesting. Following a jury trial which was conducted on November 12 through 14, 2013, Croucher was found guilty as charged. The trial court subsequently sentenced Croucher to an aggregate forty-year term of imprisonment. The trial court also determined that Croucher qualified as a credit restricted felon. This appeal follows.

## DISCUSSION AND DECISION

### I. Admission of Evidence

Croucher contends that the trial court abused its discretion in admitting certain evidence at trial in violation of Indiana Evidence Rule 404(b) ("Evidence Rule 404(b)").

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

*Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

4

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

> When addressing the admissibility of evidence under [Evidence] Rule 404(b), courts must utilize a two-prong analysis. *Scalissi v. State*, 759 N.E.2d 618, 623 (Ind. 2001). First, the court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Evidence Rule 403. *Id.* We will reverse a trial court's determination of admissibility only for an abuse of discretion. *Id.*

*Wages v. State*, 863 N.E.2d 408, 410 (Ind. Ct. App. 2007).

"Evidence Rule 404(b) was designed to assure that 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997) (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)). Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2).

5

In addition, "'[e]vidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.'" *Wages*, 863 N.E.2d at 411 (quoting *Bocko v. State*, 769 N.E.2d 658, 664-65 (Ind. Ct. App. 2002), *trans. denied*).

Prior to trial, the State notified the trial court that it planned to introduce evidence that Croucher had molested multiple victims and that Croucher acted with a common scheme or plan when sexually abusing these victims. The trial court, however, determined that the proffered evidence relating to Croucher's other alleged victims was not relevant to prove whether Croucher sexually assaulted S.C. The trial court also determined that because Croucher's actions with regard to S.C. were consistent with and similar to those seen in most child abuse cases, his actions were not indicative of a particularized scheme or plan. Accordingly, the trial court ruled that the proffered evidence was inadmissible under Evidence Rule 404(b) because it created the forbidden inference that Croucher acted in accordance with his character when he sexually abused S.C.

Croucher claims on appeal that the trial court abused its discretion in admitting Richmond Police Officer Michael Britt's reference to "potential victims." Croucher also claims that the trial court abused its discretion in admitting S.C.'s statement as to why he waited over four years before deciding to report Croucher's actions in January of 2012. We will discuss each claim in turn.

### A. Officer Britt's Reference to Multiple Potential Victims

Officer Britt testified at trial that he investigated the report that Croucher had sexually

abused S.C. In describing the steps that he took while completing his investigation, Officer Britt testified that once S.C.'s older brother "had explained to me the nature of the allegation and identified the potential victims, uh, I determined that it was going to be impossible to go any further with an investigation in that household[.]" Tr. p. 194. Croucher's counsel immediately objected and, after the jury was sent to the jury room, requested a mistrial. After having the court reporter play back Officer Britt's exact testimony, the trial court denied Croucher's request for a mistrial, finding that Officer Britt's statement "simply indicates that [S.C.'s older brother] identified the potential victims and [Officer Britt] determined that it was going to be impossible to go any further." Tr. p. 197. The trial court further stated that it did not "believe that, that violates the [Evidence Rule] 404(b) order that I entered. Nothing was said as to any alleged acts or anything of the other children." Tr. p. 197.

Upon review, we conclude that the trial court did not abuse its discretion in admitting the challenged statement. Officer Britt's statement did not refer to any specific potential victims of, or prior misconduct committed by, Croucher. We also agree with the State's assertion that Officer Britt's use of the words "potential victims" was not a definitive statement that there were multiple victims but rather an indication that he was in the process of conducting an investigation into the matter. This statement falls far short of suggesting that Croucher's character indicates that he had a propensity to commit the charged act. As such, Croucher has failed to demonstrate that Officer Britt's testimony was inadmissible under Evidence Rule 404(b).

**B. S.C.'s Statement Regarding Why He Reported the Sexual Abuse**

7

Prior to trial, the trial court determined that S.C.'s general statements as to why he waited over four years to report the sexual abuse inflicted by Croucher did not, without additional specific statements relating to Croucher's other potential victims, violate Evidence Rule 404(b). Subsequently, during trial, S.C. testified as to why he waited over four years to report the sexual abuse that was inflicted upon him by Croucher. S.C. testified that he did not report the abuse because he was "afraid of going to foster care." Tr. p. 256. S.C. indicated that he feared going to foster care because Croucher had suggested that if S.C. reported Croucher's actions, S.C. would "probably have to be split up" from his siblings. Tr. p. 256. S.C. further indicated that despite his fear of being sent to foster care, he decided to report Croucher's actions after he became aware that another person had levied molestation allegations against Croucher.

Croucher did not object to S.C.'s testimony at trial. In addition, Croucher does not argue on appeal that the admission of S.C.'s testimony constituted fundamental error. As such, Croucher has waived his appellate challenge to the above-stated testimony. *See McCarthy v. State*, 749 N.E.2d 528, 537 (Ind. 2001) (providing that a party may not assert a claim of trial court error on appeal unless the party objected to the evidence at the time it was offered).

**C. Alleged Cumulative Effect of Admission of Challenged Statements**

Croucher appears to argue that the cumulative effect of the admission of the challenged statements, when considered together, constituted fundamental error because of the probable impact that these statements had on the jury potentially made it impossible for

him to receive a fair trial. We disagree.

Fundamental error "is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

> The appellant bears the burden of proving that the alleged error occurred, and that the error was fundamental in nature. *Baird v. State* (1992), Ind., 604 N.E.2d 1170. Not all errors a party fails to assert at trial are fundamental errors. Some uncontested errors may be harmless, or otherwise have no substantial impact on the verdict. Such errors are insufficient to overcome the bar of procedural default. *See Davis v. State* (1992), Ind., 598 N.E.2d 1041. In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. The element of harm is not shown by the fact that a defendant was ultimately convicted; rather, it depends upon whether his right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. [*Hart v. State* (1991), Ind., 578 N.E.2d 336]. Our task is to look at all that happened, including the erroneous action, and decide whether the error had substantial influence upon the verdict to determine whether the trial was unfair.

*Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994).

In the instant matter, Croucher has failed to establish that the challenged statements were so prejudicial so as to make a fair trial impossible. Both Officer Britt's and S.C.'s statements appeared to be innocuous in light of the other evidence presented during trial. Again, S.C. provided detailed testimony of the repeated sexual abuse inflicted upon him by Croucher. In light of S.C.'s detailed testimony relating to Croucher's actions, it seems unlikely that either of the challenged statements detrimentally affected Croucher's right to a fair trial. As such, we conclude that the admission of the challenged statements did not

constitute fundamental error, and, as a result, the trial court did not abuse its discretion in this regard.

## II. Prosecutorial Misconduct

Croucher also contends that the deputy prosecutor committed prosecutorial misconduct during trial. Specifically, Croucher claims that the deputy prosecutor committed prosecutorial misconduct during his closing argument and rebuttal closing argument by vouching for S.C.'s credibility, referring to Croucher's sexuality, requesting the jury to do justice and protect children, and suggesting that S.C. was groomed by Croucher. We will address each claim in turn.

### A. Standard of Review

> When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct, and, if so, we next determine whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Hall v. State*, 796 N.E.2d 388, 401 (Ind. Ct. App. 2003). The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

*Ramsey v. State*, 853 N.E.2d 491, 498 (Ind. Ct. App. 2006), *trans. denied*; *see also Delarosa v. State*, 938 N.E.2d 690, 696 (Ind. 2010).

Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App.

2012) (citing *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Where a defendant does not raise a contemporaneous objection, request an admonishment, or, where necessary, request a mistrial, the defendant does not properly preserve his claims of prosecutorial misconduct. *See generally Brown v. State*, 799 N.E.2d 1064, 1066 (providing that because appellant failed to request an admonishment or move for a mistrial when the trial court overruled his objection, his claim of prosecutorial misconduct was procedurally foreclosed); *Neville*, 976 N.E.2d at 1258 (providing that because appellant failed to object to the prosecutor's statements, his claim of prosecutorial misconduct was procedurally foreclosed).

"To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error." *Neville*, 976 N.E.2d at 1258; *see also Brown*, 799 N.E.2d at 1066. Again,

> [f]undamental error is an "extremely narrow exception" to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. [*Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)]. For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." [*Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002)] (citation, quotation marks, and brackets omitted). "The element of harm is not shown by the fact that a defendant was ultimately convicted." *Davis v. State*, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005), *trans. denied* (2006). "Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled." *Id*. at 1107-08.

*Neville*, 976 N.E.2d at 1258-59.

11

## B. Vouching

Croucher claims that the State committed prosecutorial misconduct by vouching for S.C.'s credibility. Specifically, Croucher challenges numerous statements made by the deputy prosecutor during his closing argument and rebuttal closing argument.

> It is well settled that vouching for witnesses is generally impermissible. *Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009). However, "'a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.'" *Cooper*, 854 N.E.2d at 836 (quoting *Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind. 1988)). *See also Hobson v. State*, 675 N.E.2d 1090, 1095 (Ind. 1996) (prosecutor's statement "I warned you that [defendants] are liars" was not misconduct because incongruities in testimony supported inference that someone had not been testifying truthfully). In addition, an attorney may properly argue any logical or reasonable conclusions based on his or her own analysis of the evidence. *Bennett v. State*, 423 N.E.2d 588, 592 (Ind. 1981); *see also Turnbow v. State*, 637 N.E.2d 1329, 1334 (Ind. Ct. App. 1994) ("A prosecutor may also properly comment on the evidence presented to the jury and argue logical conclusions from that evidence.")[,] *trans. denied*.

*Id*. at 1260.

In *Neville*, the appellant argued that the prosecutor improperly vouched for the credibility of the State's witnesses during closing argument by describing one witness as "courageous" and another as "one of the 'good people.'" *Id*. Neville further alleged that the prosecutor told the jury that a witness "told you the truth" and stated that she had been "especially corroborated." *Id*. The prosecutor also indicated that the crime scene technician was "very good at what she does." *Id*. Upon review, this court determined that the record demonstrated that the prosecutor's comments did not amount to improper vouching because the statements were supported by the evidence and were consistent with the prosecutor's

analysis of the evidence and theory of the case.  *Id.* at 1260-61.

Croucher argues that the deputy prosecutor committed misconduct by making numerous references to S.C.'s testimony as truthful during his closing argument.  The deputy prosecutor's comments in this regard were as follows:

> Believable testimony, maybe not totally consistent.…  In fact the Court will instruct you in this way, "you should not disregard the testimony", let me repeat that.  "You should not disregard the testimony of any witness without a reason and without careful consideration."  Factors you may consider, and it list [sic] a lot and I won't go through all of them, the witness's ability and opportunity to observe, obviously.  His behavior, his manner and his conduct while he was testifying.  And most importantly your knowledge, experience, common sense gained from day to day living.  Ten times, thirty times, how many per month, [S.C.] was not looking at a clock and a calendar.  This became unfortunately the way of life with him because of what that man did.  He wasn't counting the number of times.  He was trying to think of other things.  He was being truthful when answering [the] questions [of] both me and of [defense counsel].

Tr. p. 370.

> Now let's think about that a little bit.  If [S.C.] really wanted to lie, if [S.C.] really wanted to make you really made [sic] at [Croucher] for what he did, all he had to say was, yeah, that was true.  He did perform anal intercourse on me.  He said it wasn't.  That kid's not lying.  He's telling you the truth.…  There's no motive for him to lie.  He could have made [Croucher] look worse.  On the other hand … when [S.C.] said for the first time yesterday when he was asked well did you ever put … your mouth on [Croucher's] penis and he said, yes.  Again, you know, what's odd and [S.C.'s] right, he said, I've never been asked that question before.…  And he's right, he was never asked that question.  But you know, again, that goes back to his honesty, Ladies and Gentlemen, because when [defense counsel] asked that question … [i]f [S.C.] wanted to all he had to say was one simple word, no, I didn't do it.…  But you know, he was under oath, I have to tell the truth.…  If he was going to lie about things he could have done a lot better job.  He could have said, yeah, anal course [sic].  He put his (unintelligible) in my anus.  No, I never did anything to him.  But that goes to his credibility, that tells you something.…  He told the truth because he knew he had too [sic].  He knew he was under oath … [S.C.] understood that, and he told you the truth.

13

Tr. pp. 371-73.

> If [S.C.] wanted to lie he could have done a lot better job. There's no reason,
> there's no evidence, remember a witness is presumed to be telling the truth,
> unless shown otherwise, why you should not believe [S.C.].
> [S.C.] told the truth, no matter how embarrassing to [sic] was to him.

Tr. p. 378.

> No motive to lie. No reason, and he didn't.… In fact, it's almost like he's
> being punished for telling the truth because he's taken out of school where he
> wanted to be. All those multiple teachers and friends, he's suffering. It was
> [S.C.] that was jerked out of his home. It was [S.C.] that was jerked out of
> school.

Tr. p. 379. Croucher did not object to any of these statements.

In addition, Croucher also claims that the deputy prosecutor committed misconduct when, during his rebuttal closing argument, the deputy prosecutor stated the following: "And now [defense counsel] wants to say to you because he knows how truthful [S.C.] was and is." Tr. pp. 403-04. Croucher objected to this statement, claiming that the deputy prosecutor "keeps vouching for credibility." Tr. p. 404. The trial court stated, "Well, you both have done it.… [W]hy don't we just move on. But you both have done it." Tr. 404. Croucher did not request an admonishment or a mistrial.

The deputy prosecutor's comments during closing argument and rebuttal closing argument referred to the evidence and reflected the deputy prosecutor's analysis of the evidence and theory of the case. S.C. testified during trial that he did not count the number of times he was subjected to sexual abuse or record the dates that the sexual abuse was inflicted upon him by Croucher. S.C. stated that during the abuse, he would try to

14

concentrate on other things such as homework or school the next day because he "didn't really want to be part of it." Tr. p. 250. In addition, S.C. testified that Croucher did not subject him to anal intercourse but admitted that he fellated Croucher. When asked why he had never reported that he had fellated Croucher, S.C. responded that he had never been asked about what acts he had performed on Croucher. S.C. also testified that he enjoyed the school he attended and the activities he participated in when he lived with Croucher. S.C. indicated that he missed the school and the activities. S.C. also indicated that he missed the friends he made at school and through his participation in the various activities. Because the deputy prosecutor's statements referred to the evidence and reflected the deputy prosecutor's analysis of the evidence, the statements did not amount to improper vouching. Croucher has failed to prove that the State committed prosecutorial misconduct in this regard.

Furthermore, because Croucher failed to object to or request an admonishment or mistrial after the alleged misconduct by the deputy prosecutor, he must prove that the alleged misconduct amounted to fundamental error. *See Neville*, 976 N.E.2d at 1258. Croucher has failed to do so. Thus, even if Croucher had established that the deputy prosecutor's statements amounted to improper vouching, Croucher has failed to establish on appeal that the deputy prosecutor's statements placed him in a position of grave peril or made a fair trial impossible. As such, Croucher has failed to establish prosecutorial misconduct with regard to the deputy prosecutor's alleged vouching for S.C.'s credibility.

**C. Reference to Croucher's Sexuality**

During voir dire, defense counsel asked a prospective juror the following question: "If

15

a witness come [sic] in and they have a different sexuality than you do, okay?  Does that, is that going to make them more or less believable?"  Tr. p. 116.  S.C. subsequently provided testimony suggesting that Croucher might be a homosexual.  During his closing argument, the deputy prosecutor made reference to defense counsel's use of the term "different sexuality," stating:

> [Defense counsel] mentioned the words "different sexuality".  And as, in other words (unintelligible) I'm going by my notes if you heard something different or observed, that's up to you, I'm just arguing what I heard.  Brought before us a different sexuality, matter of course [Croucher] and victim lived in and slept in the same bedroom, remember that.  I didn't bring p [sic] the lifestyle.

Tr. p. 369.  The deputy prosecutor twice more referred to defense counsel's use of the term "different sexuality," stating: "[i]t's a different type of sexuality, like [defense counsel] said," tr. p. 378, and "I'll never understand the life style, but on the other hand you can't speculate." Tr. p. 381.  Croucher did not object to any of the above-quoted comments.

Again, because Croucher did not object to the deputy prosecutor's statements during closing argument referring to defense counsel's use of the term "different sexuality," Croucher must prove not only misconduct but also fundamental error.  Croucher argues that the deputy prosecutor's comments constituted fundamental error because the comments lead one to the "forbidden inference that, because he was homosexual, he was likely to have molested this young male child."  Appellant's Br. p. 12.  However, we must note that the Indiana Supreme Court has held that prosecutors "are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (citing *Brown v. State*,

16

746 N.E.2d 63, 68 (Ind. 2001)).  Therefore, even if the deputy prosecutor's comments did lead one to the forbidden inference argued by Croucher, the deputy prosecutor's reference to the term "different sexuality" must be treated as invited error as it was raised as a response to defense counsel's comments before the jury during voir dire.  Croucher did not establish prosecutorial misconduct in this regard.

### D.  Request for Jury to Do Justice and Protect Children

During closing argument, the deputy prosecutor made the following statement:

> And after hearing the evidence I now ask you to return a verdict of guilty on both counts.  And I ask you without hesitation based upon what you saw yesterday from this witness stand, without any hesitation, without any doubt in my mind, to ask each one of you to bring back guilty verdicts so that justice may be done, and children may be protected.

Tr. p. 381.  Croucher objected to this statement.  The trial court sustained Croucher's objection and admonished the jury to disregard the statement.  Croucher did not request a mistrial.

The Indiana Supreme Court has held that appellate courts "may presume that a timely and accurate admonishment by the trial court will cure any defect."  *Green v. State*, 587 N.E.2d 1314, 1317 (Ind. 1992) (citing *Bell v. State*, 267 Ind. 1, 8, 366 N.E.2d 1156, 1160 (1977)).  In light of the Indiana Supreme Court's holding in *Green*, coupled with the trial court's timely admonishment for the jury to disregard the deputy prosecutor's statement, we conclude that Croucher could not have been prejudiced by the deputy prosecutor's remark.

### E.  Cumulative Effect

Croucher appears to argue that while any of the above-stated alleged acts may not,

17

without more, subject Croucher to grave peril, the cumulative effect of the deputy prosecutor's comments during closing argument and rebuttal closing argument "undoubtedly impacted" the jury. Appellant's App. p. 13. Croucher, however, does not provide any argument detailing what specific impact he believes these statements had on the jury. The State, for its part, reiterates its claim the challenged comments do not rise to the level of misconduct. Alternatively, the State argues that any improper comments were cured by the trial court's preliminary and final instructions.

The trial court instructed the jury that the attorneys' final arguments "are not evidence." Tr. p. 161. Both the Indiana Supreme Court and this court have held that improper arguments made during closing argument may be cured by the trial court's instructions to the jury. *See Flowers v. State*, 738 N.E.2d 1051, 1059 (Ind. 2000) (providing that improper comment by prosecutor was de minimis in nature and overcome by the trial court's instructions to the jury); *Surber v. State*, 884 N.E.2d 856, 866 (Ind. Ct. App. 2008) (providing that any prejudicial impact of the prosecutor's allegedly improper comments during closing argument was minimal and did not create an undeniable and substantial for harm in light of the trial court's instruction that such comments were not evidence), *trans. denied*. As in *Surber*, we conclude that, in the instant matter, any cumulative prejudicial impact of the deputy prosecutor's allegedly improper comments during closing argument and rebuttal closing argument was minimal and did not create an undeniable and substantial potential for harm in light of the trial court's instruction to the jury that said comments were

18

not evidence.[1]

### III. Croucher's Status as a Credit Restricted Felon

Croucher also contends that the trial court abused its discretion in determining that he qualified as a credit restricted felon. Specifically, Croucher claims that application of the 2008 credit restricted felon statute violated the constitutional prohibition of *ex post facto* laws because the charging information included the allegation that some of his criminal acts occurred before the credit restricted felon statute went into effect.

> The credit restricted felon statute was enacted through Pub. L. 80-2008, Sec. 6, which was effective on July 1, 2008 and applied "only to persons convicted after June 30, 2008." The statute defined "credit restricted felon" as:
>> [A] person who has been convicted of at least one (1) of the following offenses:
>> (1) Child molesting involving sexual intercourse or deviate sexual conduct (IC 35-42-4-3(a)), if:
>> (A) the offense is committed by a person at least twenty-one (21) years of age; and
>> (B) the victim is less than twelve (12) years of age.
>> (2) Child molesting (IC 35-42-4-3) resulting in serious bodily injury or death.
>> (3) Murder (IC 35-42-1-1), if:
>> (A) the person killed the victim while committing or attempting to commit child molesting (IC 35-42-4-3);
>> (B) the victim was the victim of a sex crime under IC 35-42-4 for which the person was convicted; or
>> (C) the victim of the murder was listed by the state or known by the person to be a witness against the person in a prosecution for

---

[1] Furthermore, we cannot agree with Crouchers' apparent assertion that the deputy prosecutor committed prosecutorial misconduct in his closing argument by suggesting that one reason why S.C. might have waited four years to report the sexual abuse inflicted by Croucher was that Croucher "groomed" S.C., convincing him not to tell anyone. The evidence supports the deputy prosecutor's suggestion that Croucher groomed S.C. to accept his sexual advances and convinced S.C. not to report the sexual abuse. "It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence." *Hand v. State*, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). The deputy prosecutor did not commit misconduct by propounding his conclusion that the evidence indicated that Croucher groomed S.C.

> a sex crime under IC 35-42-4 and the person committed the murder with the intent to prevent the person from testifying.
>
> Ind. Code § 35-41-1-5.5. "A person who is a credit restricted felon and who is imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class IV. A credit restricted felon may not be assigned to Class I or Class II." Ind. Code § 35-50-6-4(b). Ind. Code § 35-50-6-3(d) provides that: "A person assigned to Class IV earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing."

*Upton v. State*, 904 N.E.2d 700, 704-05 (Ind. Ct. App. 2009).

Although by its own terms, the restricted credit felon statute would apply to an individual who was convicted of a requisite criminal act at any time after July 1, 2008, we concluded in *Upton* that retroactive application of the credit restricted felony statute to a defendant who committed an offense before the effective date of the statute was an *ex post facto* violation even though the defendant was convicted after the effective date of the statute. *Id*. at 706. Likewise, in *Gaby v. State*, 949 N.E.2d 870, 883 (Ind. Ct. App. 2011), we noted that the defendant, who was convicted of Class A felony child molesting in 2010, would appear to qualify as a credit restricted felon under the terms of the credit restricted felon statute. However, we concluded that, in light of our opinion in *Upton*, the application of the credit restricted felon statute to the defendant would be an unconstitutional *ex post facto* violation because the defendant committed his offense prior to the effective date of the statute. *Id*. Thus, we concluded that the defendant could not be sentenced as a credit restricted felon. *Id*.

Since Croucher was convicted in 2013, the statute would, by its own terms, apply to Croucher. However, we must conclude that in light of our conclusions in *Gaby* and *Upton*,

20

application of the statute to Croucher would constitute an *ex post facto* violation. The charging information relating to the requisite criminal act alleges the following:

> [B]etween August 2007, and August 2011, in Wayne County, State of Indiana, Paul A. Croucher, a person over 21 years of age, did, with a child under 14 years of age, to-wit: S.C., perform or submit to deviate sexual conduct, contrary to Indiana law.

Appellant's App. p. 11. Croucher correctly asserts that there is no way to determine whether the jury determined that he committed the requisite acts before or after the credit restricted felon statute went into effect on June 30, 2008. Accordingly, we conclude that the trial court abused its discretion in classifying Croucher as a credit restricted felon.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial and that Croucher failed to establish that the deputy prosecutor engaged in prosecutorial misconduct. However, we also conclude that the trial court abused its discretion in determining that Croucher qualified as a credit restricted felon. Accordingly, we affirm in part, reverse in part, and remand to the trial court to amend its sentencing order to remove the classification of Croucher as a credit restricted felon.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and ROBB, J., concur.

21