ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

William D. McCarty Pamela Carter

Anderson, Indiana Attorney General of Indiana

Lisa M. Paunicka

Deputy Attorney General

Indianapolis, Indiana

In The

INDIANA SUPREME COURT

ROBERT L. PAGE, ) 

Defendant-Appellant, )                 

)

v. ) 48S00-9411-CR-1095

) STATE OF INDIANA, )

Plaintiff-Appellee. )

                          ________________________________________________  

APPEAL FROM THE MADISON SUPERIOR COURT

The Honorable Thomas Newman, Jr., Judge

Cause No. 48D03-9305-CF-187

                        _________________________________________________

On Direct Appeal       

DICKSON, J.

In this direct appeal, the defendant, Robert Page, challenges his conviction and sentence for murder stemming from the May 24, 1993, killing of Emily Smith.  The defendant presents four arguments for our review: (1) a special prosecutor should have been appointed;  (2) statements made by the defendant while he was in the emergency room should have been suppressed;  (3) the trial court failed to properly find and balance aggravating and mitigating circumstances when enhancing his sentence; and  (4) his sentence is manifestly unreasonable.  We affirm his conviction and sentence.

1.    Special Prosecutor

The defendant contends that a special prosecutor should have been appointed because his original public defender, David Puckett, ended his representation of the defendant after six weeks and joined the Madison County Prosecuting Attorney’s Office.  Acknowledging that Puckett did not assist the State at trial, the defendant urges that public confidence in the integrity of the criminal justice system required the trial court to appoint a special prosecutor.  He cites case law from other jurisdictions
 holding that a defendant does 
not
 have to show actual prejudice and urges that Indiana should adopt the same rule.  

This Court has recently observed that a conflict of interest of a deputy prosecutor will not necessarily disqualify the entire prosecutor’s office.   
Johnson v. State
, 675 N.E.2d 678, 681 n.2 (Ind. 1996).
  Citing the Final Comment to Indiana Professional Conduct Rule 1.11, we have noted that the “[r]ule prohibiting a government lawyer from participating in a matter in which the lawyer participated personally and substantially while in private practice generally ‘does not disqualify other lawyers in the agency with which the lawyer in question has become associated.’”  
Id.
   When one deputy prosecutor has a conflict but is 
not
 involved in the case in any way, we do not require the disqualification of the deputy prosecutor who 
is
 involved in the case, unless the defendant can show that actual prejudice will result from the prosecution.  
See
 
Williams v. State
, 631 N.E.2d 485 (Ind. 1994). 

In the present case, the prosecutor testified that he and Puckett never discussed the defendant’s case.  The defendant has not demonstrated actual prejudice resulting from the prosecution.
  
We decline to overrule our prior case law requiring actual prejudice. 

We find no error on this issue. 

2.   Emergency Room Interview

The defendant challenges the admission of his statements made while he was being treated in the emergency room.  Early in the morning of May 23, 1993, the defendant called 911 and reported that he had killed Emily Smith.  Finding Smith in bed with fatal gunshot wounds, police officer Robert Knuckles then went to the defendant’s home and found him in the basement with a gun.  After stating to the officer that he had killed Smith, the defendant shot himself.  The wound was not life-threatening and the defendant was taken to the hospital.  While in the hospital, an oxygen tube in the defendant’s nose restricted his ability to speak and
 the defendant answered questions from hospital personnel by shaking his head “yes” or “no.”  Officers James Roberts and Thomas Hays--whom the defendant knew from his days as a former police officer-- noticed the defendant communicating with the hospital staff in this way and asked the defendant if he would answer their questions in the same manner, to which the defendant responded affirmatively.  The officers gave the defendant a 
Miranda
 advisement, which he indicated he understood.  He also indicated that he wished to waive his Fifth Amendment rights and communicated to the officers that he had argued with the victim, that he believed she was dating someone else, that he was upset, and that he shot her.

The defendant voluntarily testified at trial.  Contrary to his hospital statements, at trial the defendant testified that Smith reached for the gun and that it went off when they struggled over it.  He denied being upset about her seeing someone else.  To impeach this testimony, on rebuttal the State called Officer Roberts, who testified regarding the defendant’s hospital statements.

The defendant argues that, because of his “physical, physiological, mental, emotional, educational and/or psychological state, capacity and condition” he was “incapable and unable to appreciate and understand the full import of his 
Miranda
 rights and that alleged statements made by the defendant were not made voluntarily, knowingly and intelligently.”  Brief of Appellant at 10.  However, it is well-established that statements by a defendant are admissible for the purpose of impeaching the defendant’s trial testimony, even if the statements were obtained in violation of 
Miranda
.
(footnote: 1)  
Harris v. New York
, 401 U.S. 222, 225-26, 91 S.Ct. 643, 645-46, 28 L.Ed.2d 1, 4-5 (1971) (“The shield provided by 
Miranda
 cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances.”).  
See also
  
Barker v. State
, 440 N.E.2d 664 (1982);  
Johnson v. State
, 258 Ind. 683, 284 N.E.2d 517 (1972).  Use of the defendant’s statements as impeachment is restricted only when such statements are obtained under coercion or duress.  
See, e.g.,
  
Mincey v. Arizona
, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

Ensuring that statements are voluntary protects against police misconduct.  
Colorado v. Connelly
, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
(footnote: 2)  Thus, we have recognized that the critical inquiry into the voluntariness of statements is whether, looking to all of the circumstances, the defendant’s statements were induced by “violence, threats, promises or other improper influence.”  
Bivins v. State
, 642 N.E.2d 928, 942 (Ind. 1994), 
cert.denied
, ___ U.S. ___, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996);  
Rowe v. State
, 444 N.E.2d 303, 304 (Ind. 1983).

The defendant contends that his statements were not voluntary because he had taken medications, was very tired, had tried to commit suicide, and was questioned at the emergency room where he was being treated.  The defendant cites the United States Supreme Court decision in 
Mincey
 as dispositive.  However, the facts of 
Mincey
 distinguish it from the facts of the case at bar.  The defendant in 
Mincey
 was in extremely serious condition in the intensive care unit, his answers were not coherent, he repeatedly asked the police to stop questioning him until he could get an attorney, he gave unresponsive or uninformative answers, and “he complained several times that he was confused or unable to think clearly, or that he could answer more accurately the next day.”  
Mincey
, 437 U.S. at 400-01, 98 S.Ct. at 2418, 98 L.Ed.2d at 305.  The officers disregarded the defendant’s requests and extreme medical condition, continuing to question him for four more hours, stopping only when the defendant lost consciousness, and immediately continuing once he regained consciousness.  The Court found that the actions by police under those circumstances were coercive, causing the defendant’s will to be overborne.

In the case at bar, the trial court, after testimony from both sides, found that the defendant’s statement was voluntary.  We recognize that the defendant may well have been tired, depressed, and upset.  However, as we have recently stated, “[a]lthough a person’s mental condition is relevant to the issue of susceptibility to police coercion, where the person voluntarily makes a confession without police coercion the confession may be considered in spite of the mental condition.”  
Roark v. State
, 644 N.E.2d 565, 568 (Ind. 1994).  The defendant does not demonstrate that police misconduct, coercion, violence, threats, promises, or any other improper police influence rendered the confession involuntary.
(footnote: 3)  We find no error in the admission of the defendant’s statements to impeach his trial testimony.

3.   Aggravating and Mitigating Circumstances For Sentence Enhancement

Following the sentencing hearing, the trial court imposed an enhanced sentence of sixty years for the defendant’s murder conviction.
(footnote: 4)  The defendant contends that the trial court “ignored mitigating factors which are clearly supported by the record” and that none of the aggravating factors identified by the trial court justify the enhanced sentence. 
  Brief of Appellant at 23.

A.   Mitigating Circumstances

In its sentencing order, the trial court found that there were “no mitigating circumstances.”  Record at 1588.  Sentencing is within the sound discretion of the trial court, and this Court will “review sentencing only for abuse of discretion.”  
Grund v. State
, 671 N.E.2d 411, 418 (Ind. 1996).  As noted by the defendant:

[T]he use of mitigating circumstances in the determination of the ultimate sentence is not mandatory; it is discretionary with the sentencing court.  When a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. . . . Moreover, the trial court is not obligated to credit or weigh the defendant’s evidence of mitigating circumstances the same way the defendant does.

Tunstill v. State
, 568 N.E.2d 539, 546 (Ind. 1991).  However, we recognize that, if 
significant
 mitigating circumstances are 
clearly
 supported by the record, they may reasonably give rise to a belief that they were overlooked and hence not properly considered.  
Id.
  The alleged mitigating circumstances presented by the defendant in this case are not significant, nor are they clearly supported by the record.

The defendant’s first contention--that he had long term employment--is not clearly supported by the record.  The defendant contends that was employed from 1969 to 1971 as an Anderson Police Officer and from 1973 to 1989 at Guide Lamp in Anderson.  The defendant does not cite, nor does our review reveal, any introduction of evidence regarding his employment at Guide Lamp.  Further, the defendant cites no evidence that he was employed at the time of the murder, and his Appellate Brief indicates that he had not been employed during the four years which preceded the murder.  The only evidence as to employment history is a reference to the defendant’s prior police employment, and the trial court specifically found that “prior police employment is not a mitigating circumstance.”  Record at 1588.  This was not an abuse of discretion.

The defendant also contends that a mitigating circumstance exists because of his “good behavior while held in jail awaiting trial.”  Brief of Appellant at 23.  However, the defendant presented no evidence during the sentencing proceeding as to his behavior and, as support in his brief, merely asserts that there was “no evidence that the defendant had been an unruly prisoner in the 14 months pre-trial detention.”  Brief of Appellant at 24.

This does not lead to a finding that the evidence is clearly supported in the record.  Additionally, we note that the defendant in 
Trueblood v. State
, 587 N.E.2d 105 (Ind. 1992), 
cert. denied
, 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205, similarly argued that the sentencing court “should have found that his good conduct in jail while awaiting trial was a mitigating circumstance.”  
Id.
 at 110.  This Court rejected that contention.  The trial court did not abuse its discretion in failing to find this a mitigating circumstance.

Finally, the defendant argues that he cooperated with authorities by reporting his conduct himself and answering questions at the hospital and that this cooperation is a mitigating circumstance.  While this may have been entitled to some weight, it does not command a change in the sentence.

B.   Aggravating Circumstances

The trial court found the presence of several aggravating circumstances:  (1) the defendant’s prior criminal history (a felony criminal recklessness conviction for acts against his former wife);  (2) the Probation Department’s conclusion that the defendant was at high risk to offend again;  (3) the impact of the murder on the victim’s children;  (4) the heinous facts of the crime;  (5) the defendant’s position of trust in relation to the victim;  and (6) the crime was premeditated.  

The defendant contends that “[n]one of these factors properly justify the enhanced sentence.”  Brief of Appellant at 20.  We disagree.  
  

The trial court may consider, as an aggravating factor, the fact that a defendant “has a history of criminal or delinquent activity.”  
Ind. Code
 § 35-38-1-7.1(b)(2) (1996).  During the sentencing hearing, the defendant acknowledged that he had a prior felony conviction for criminal recklessness.  A single aggravator is sufficient to sustain an enhanced sentence.  
Kingery v. State
, 659 N.E.2d 490, 496 (Ind. 1995)
.   The trial court did not abuse its discretion in imposing an enhanced sentence.  

4.     Sentence is Manifestly Unreasonable

The defendant’s final contention is that his sentence of sixty years is manifestly unreasonable.  Our appellate rules state, “The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.”  Ind.Appellate Rule 17(B).

The defendant argues that the sentenced was excessive because he “had only 1 criminal conviction from over 12 years prior to the matter at issue, and killed his long term girlfriend as a result of a domestic breakup.”  Brief of Appellant at 32-33.  We are not persuaded that his sentence was so egregious as to be manifestly unreasonable.

Conclusion

The judgment of the trial court is affirmed. 

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.  

FOOTNOTES
1:
We are not implying that the defendant’s rights were, in fact, violated.  We only note that the use of statements for impeachment purposes is governed by whether “the trustworthiness of the evidence satisfies legal standards,” not whether the statements were made in accordance with 
Miranda
.  
Harris
, 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4.

2:
The defendant in 
Connelly
 was a mentally disturbed man suffering from “command hallucinations”--he heard the “voice of God” order him to confess or commit suicide--whose confession was admissible because there was no police misconduct.  
Connelly
, 479 U.S. at 161, 107 S.Ct. at 519-20, 93 L.Ed.2d at 480-81.

3:
Moreover, in his argument as to mitigating circumstances, discussed 
infra
, the defendant cites his voluntary cooperation with the authorities at the hospital as a mitigating circumstance.  Brief of Appellant at 25.

4:
At the time this offense was committed, 
a conviction for murder carried with it a presumptive sentence of forty years.  
Ind.Code
 § 35-50-2-3 (1993).  The maximum enhancement available was twenty years.