Gary R. SCALISSI, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 20S00–0003–CR–200.

Supreme Court of Indiana.

Dec. 14, 2001.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Gary Scalissi was convicted of murder for shooting a man who had been staying in his apartment. We affirm, holding his claimed intoxication did not render his confession involuntary absent police coercion and testimony that he raped the victim's companion was relevant to his motive and to whether the shooting was accidental. Two trial errors do not require reversal: the first because the error was harmless; the second because there was no objection at trial.

### Background

On June 18, 1999, Gary Scalissi came home from work to find his roommate and two of his roommate's friends on the couch drinking beer and smoking marijuana. This had been a pattern for several days. Robert Waller, his roommate, had stopped going to work and Harry Fink and Annette Fouche had been staying at Defendant's apartment without paying rent or contributing any money to household expenses. In fact, Defendant and his roommate were behind on rent and had already received an eviction notice.

Defendant left the apartment several times to get more beer. The last time Defendant came home, an argument with Fink escalated into a fistfight. Fink hit Defendant several times, at one point chipping Defendant's tooth. A little later Defendant went into the bedroom, took out his roommate's shotgun, and shot Fink. As will be seen, the facts surrounding the argument, the fight, and the shooting were in dispute at trial. Fink later died from his wounds.

Early on June 19, 1999, Defendant was found asleep in the back of a taxicab near the crime scene. Detective Mock, the officer assigned to the investigation, took Defendant to the police station. On the way to the police station, Detective Mock orally advised Defendant of his *Miranda* rights, which Defendant waived at that point. At the police station, Detective Mock again advised Defendant of his *Miranda* rights, which Defendant again waived. Defendant then gave a statement, which Detective Mock typed. Defendant's statement indicated that he had knowingly and intentionally shot Harry Fink. Defendant was

charged with murder[1] and, after a five-day jury trial, was found guilty of Fink's murder. Defendant now appeals his conviction, raising several issues.

We will recite additional facts as necessary.

### Discussion

### I

Defendant contends that the trial court committed reversible error when it allowed his written confession to be admitted into evidence. Defendant argues that the State did not meet its burden of proving that his confession was voluntary, intelligent, and freely made because of the evidence that he had not slept the night before, had been ingesting large quantities of alcohol, along with LSD, crank (methamphetamine), and marijuana, and had been struck and kicked in the head a short time before the statement was made.

■ The State bears "the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given." *Crain v. State,* 736 N.E.2d 1223, 1230 (Ind.2000) (citing *Schmitt v. State,* 730 N.E.2d 147, 148 (Ind.2000)). Where the State has met its burden and the trial court has ruled to admit the confession, we review the trial court's determination for an abuse of discretion. *Ringo v. State,* 736 N.E.2d 1209, 1211 (Ind.2000) (citing *Jones v. State,* 655 N.E.2d 49, 56 (Ind.1995), *reh'g denied* ). When reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence, but instead examine the record for substantial, probative evidence of voluntariness. *Carter v. State,* 730 N.E.2d 155, 157 (Ind.2000).

■ Defendant asks us to infer from certain answers given to the police and the asserted illegibility of his signature on his statement that he was so highly intoxicated (and otherwise mentally impaired) at the time of his confession that it should not be considered knowing, voluntary, and intelligent. Defendant cites several somewhat older cases[2] for the proposition that a person can be too intoxicated to make a voluntary confession. More recent cases, however, make clear that coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Crain,* 736 N.E.2d at 1231 (citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *United States v. Dillon,* 150 F.3d 754, 757 (7th Cir.1998). The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. *Page v. State,* 689 N.E.2d 707, 711 (Ind.1997).

■ Factors such as intoxication and lack of sleep may be factors in determining voluntariness. *Ringo,* 736 N.E.2d at 1213 (Ind.2000) (citing *Pettiford v. State,* 619 N.E.2d 925 (Ind.1993) (citing in turn *Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473)). However, Defendant makes no argument that there was any violence, threats, promises, or improper

---

1. Ind.Code § 35–42–1–1 (1998).

2. *Houchin v. State,* 581 N.E.2d 1228 (Ind. 1991); *Gregory v. State,* 540 N.E.2d 585 (Ind.

1989); *State v. Cooley,* 162 Ind.App. 482, 319 N.E.2d 868 (1974).

influence in this case.[3]

■ We find that the trial court did not abuse its discretion in denying Defendant's motion to suppress because the record contains substantial probative evidence sufficient to establish beyond a reasonable doubt that there was no evidence of improper police influence or coercion in obtaining the confession.

## II

■ Defendant contends that evidence of a prior uncharged act of rape was improperly admitted under Indiana Evidence Rule 404(b).[4] Defendant argues that the trial court committed reversible error by allowing Annette Fouche to testify that Defendant had raped her.

The events giving rise to this claim took place a short time prior to the shooting of Fink. Defendant had returned to his apartment at around 11:00 in the evening, and about a half hour later, he sent Rob Waller out to obtain more marijuana, as they had run out. After Waller left the apartment, Defendant, Fouche, and Fink sat down to watch television. At one point, Defendant went into the kitchen to get a beer. After Defendant came back from the kitchen, he and Fouche had sexual intercourse. Defendant contends that he was invited to have sex with Fouche by Fink and that she consented. Fouche contends that Defendant raped her despite her (and Fink's) efforts to resist. There is agreement that after this, Fouche took a shower and came back into the living room to hear the Defendant and Fink arguing. But the accounts of the events that took place after the argument are in dispute.

Defendant testified that after the argument, he threatened to call the police to report Fink. Fink prevented this by pulling Defendant away from the phone, and also prevented Defendant from leaving the apartment. Defendant testified that he felt threatened and went to get the shotgun just to scare Fink. But in his walk from the bedroom to the living room, Defendant testified that he stumbled on the carpet and the shotgun fired accidentally, hitting Fink.

Fouche's testimony is the opposite. Fouche testified that after she got out of the shower, she heard Defendant and Fink fighting. Fink threatened to call the police to report the rape, and Defendant pulled the phone cord out of the wall to prevent Fink from dialing the phone. Another fistfight ensued, and then it ended abruptly. After the fight, Defendant went to the kitchen to get more beer for himself and Fink, and then sat down on the couch with Fink and Fouche. Defendant then stated to Fink, "I'm gonna take you down just like you took me down." Fink replied, "The only way you're gonna take me down ... is to shoot me, and when you shoot me, make sure that I'm dead." According to Fouche, Defendant got up from the couch, went to his room, and came back with the shotgun. Fouche testified that Defendant deliberately aimed the shotgun at Fink before he pulled the trigger.

The trial court allowed Fouche to testify about the alleged rape for the limited purpose to show intent, motive, and absence of

**3.** The contention that he had been "struck and kicked in the head a short time before" his confession related to his fight with the victim, not to any altercation with the police.

**4.** Rule 404(b) states, in part, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

accident or mistake. In its ruling, the trial court stated, "the relevancy [of Fouche's rape testimony] would be dictated by [Defendant's] choice of defense of accident. In that sense it seems to me it'd be clearly relevant as to whether or not this was an accident."

■ When addressing the admissibility of evidence under Rule 404(b), a trial court must utilize a two-prong analysis. First, the trial court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. Second, the trial court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Indiana Evidence Rule 403.[5] *Dickens v. State*, 754 N.E.2d 1, 4 (Ind.2001); *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). This court will review the trial court's determination and only reverse when there is an abuse of discretion. *Dickens*, 754 N.E.2d at 4.

Our review of the record reveals that the rape testimony given by Fouche was relevant. The alleged rape immediately preceded the shooting of Fink and together with the argument and fistfight, Fouche's testimony provided a potential motive for Defendant deliberately to shoot Fink. Fouche's testimony was therefore relevant to rebut Defendant's defense of accident. In addition, the timing of the prosecution's request to offer the rape testimony suggests that the prior bad act evidence was not offered for the purpose of showing Defendant's propensity for violent crimes. Although the State had indicated that Fouche was a potential witness, it was only after Defendant disclosed his defense of accident (outside the presence of the jury) that the State indicated it would put her on the stand to testify about the alleged rape. The court took this timing into consideration and properly ruled that the evidence was relevant and probative to the State's case in chief, tending to show Defendant's motive and intent.

■ Next we assess the trial court's balance under Rule 403. *Crain*, 736 N.E.2d at 1236. Although not explicit, it is clear from the record that the trial court was of the view that the probative value of Fouche's testimony was not substantially outweighed by its prejudicial effect. The trial court discussed the probative value of the rape testimony, noting the proximity of the alleged rape to the shooting of the victim. This proximity in time made the alleged rape evidence probative to showing Defendant's motive, intent, or absence of accident or mistake.

However, the court did recognize the prejudicial nature of Fouche's testimony. When the testimony was given, the trial court instructed the jury to not take Fouche's testimony as proof of Defendant's character. We have long held that when a jury is properly instructed by the trial court, the jury is presumed to have followed such instructions. *See Tabor v. State*, 461 N.E.2d 118, 125 (Ind.1984); *see also Chandler v. State*, 581 N.E.2d 1233, 1237 (Ind.1991). Moreover, there is no evidence before us that indicates the contrary. *See Tabor*, 461 N.E.2d at 125. We conclude that the trial court did not abuse its discretion when it admitted the rape testimony under Rule 404(b) for the limited purposes of showing intent, motive, and absence of mistake or accident.

### III

Defendant next contends that the State's use of his prior convictions to impeach his

**5.** Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

testimony violated the ten-year restriction of Indiana Evidence Rule 609.[6] Defendant argues his conviction should be reversed because this testimony "unfairly prejudiced Defendant" in the jurors' eyes.

On direct examination, Defendant testified about a conversation he had with Fink on the day of the murder. Fink had told Defendant that they did not need to work to make rent money; instead, Defendant could steal the money they needed. Defendant told Fink, "I'm done with stuff like that."

On cross examination, the State asked Defendant what he had meant by "I'm done with stuff like that." Defendant replied that he meant he was finished with stealing from people. The State proceeded to question Defendant about his prior convictions for theft. On objection, the State's only explanation was that Defendant had opened the door to such an impeachment by stating he was not a thief.

The trial court ruled in favor of admissibility stating, "[t]he convictions will be admissible.... [I]n light of the Defendant's testimony that he was not a thief, and [that] he wasn't up for getting involved in any of that kind of activity, [the probative value] outweighs the prejudicial effect of antiquated convictions more than ten years old."

Our prior cases that have discussed Rule 609(b) and the ten-year limitation have dealt with situations where the defendant

wanted to impeach a State witness with prior convictions that were more than ten years old. *See Stephenson v. State*, 742 N.E.2d 463, 485 (Ind.2001); *Schwestak v. State*, 674 N.E.2d 962, 963 (Ind.1996). In this case, the opposite is true. The State impeached Defendant's testimony with Defendant's prior convictions for theft ranging from 1970 to 1984. We assume for purposes of analysis that Defendant did not "open the door" to this evidence.

 Rule 609(b), unlike Rule 403, is a rule that presumes the exclusion of convictions more than ten years old. *See* Robert Lowell Miller, Jr., *Indiana Practice*, Vol. 13, § 609.202, 170 (1991). As such, the party seeking to admit such convictions "must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility." *Id.* In addition, the trial court must balance the probative value against the prejudicial effect of the old convictions on the record. We review this ruling under Rule 609(b) for an abuse of discretion. *Stephenson*, 742 N.E.2d at 485, *Schwestak*, 674 N.E.2d at 965; *see United States v. Reed*, 2 F.3d 1441, 1448 (7th Cir.1993).

 The five-part test first enunciated in *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.) *cert denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), and reaffirmed in *United States v. Castor*, 937 F.2d 293 (7th Cir.1991), is instructive.[7]

---

6. The relevant portion of Rule 609 reads, "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

7. This five-part test has been applied to Federal Evidence Rule 609(b), but as both the

federal rule and Indiana rule are similar in language, the factors to be considered are useful for our purposes here. Fed. Evid. R. 609(b) states, in part, "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and

The trial court is to consider the following five factors, but this list is not exclusive: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crimes; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *Castor*, 937 F.2d at 299 n. 8; *see* Miller, at 171.

The last two factors—the importance of Defendant's testimony and the centrality of the credibility of Defendant— do cut in favor of the admissibility of the convictions. But while these two factors favor admission, they are also in tension with the fact that the "risk of unfair prejudice is greater when the conviction is that of a party." Miller, at 170. Additional assessment of the convictions is needed to ensure that the probative value of these remote convictions substantially outweighs their prejudicial effect. Evid. R. 609(b)

This was not done by the trial court. For example, the point in time of the last conviction and the witness's subsequent history was not considered. The latest conviction for theft was in January 1984. Between 1984 and the time of trial, fifteen years had passed without Defendant earning another theft conviction or charge.[8] The admission of these convictions without further analysis violates the principle implicit in the ten-year time limit that older convictions have little bearing on the current state of a defendant's credibility.

Here, the State has not effectively rebutted the exclusionary presumption of Rule 609. We hold that the trial court abused its discretion when it admitted

circumstances substantially outweighs its prejudicial effect."

stale convictions without an analysis of the facts and circumstances surrounding the convictions and Defendant's current charge for murder. *See Schwestak*, 674 N.E.2d at 964 ("We cannot see why the probative value of this conviction, which is more than ten years old, is so high as to overcome the general rule that stale convictions are not admissible.")

However, when the trial court has erroneously admitted evidence, we "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind. Trial Rule 61. We have interpreted this to mean that if, in light of all the evidence in the case, the error has had an insubstantial impact on the jury, the error did not affect the substantial rights of the parties. *See Williams v. State*, 749 N.E.2d 1139, 1142 (Ind.2001); *Schwestak*, 674 N.E.2d at 965; *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995).

The State had additional opportunities to impeach Defendant's credibility during the State's cross-examination of Defendant. These included eliciting evidence of prior inconsistent statements of Defendant, consumption of alcohol and marijuana prior to the shooting, the victim as a threat to Defendant, and Defendant's written confession and later retraction. In light of all the evidence, it appears that Defendant's rights have not been substantially affected by the erroneous admission of his prior theft convictions. Even if the prior theft convictions had not been admitted, the jury would have had substantial impeachment evidence before it to cast doubt on the credibility of Defendant's testimony.[9]

8. Defendant had non-theft convictions between 1984 and 1998, but these convictions are not presently at issue.

9. Defendant argues that even if the prior un-

## IV

Defendant contends that he is entitled to have his conviction reversed because the trial court did not instruct the jury that it was the judge of law and the facts.

Article 1, Section 19 of the Indiana Constitution provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Indiana Code § 35–37–2–2(5), states in part: "In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. The judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law."

Indiana Trial Rule 51(C) requires a party to object at trial as a prerequisite for claiming error on appeal. *Scisney v. State,* 701 N.E.2d 847, 849 (Ind.1998). Here Defendant did not object to the absence of a law and the facts instruction. He asks that we review this claim on grounds that the trial court's omission constituted "fundamental error."

The fundamental error doctrine holds that we will grant relief even where error is not properly preserved for appeal when the error is so prejudicial to the rights of the defendant that a fair trial was impossible. *See Carter v. State,* 738 N.E.2d 665, 677 (Ind.2000); *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998). Here it was clearly error for the trial court not to give the law and the facts instruction as required by statute. But given that the jury was properly instructed as to all of the elements of the offense and counsel interposed no request for a law and the facts instruction nor objected to its

omission, we are unable to find any fundamental error.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

charged act of rape and the prior theft convictions were harmless error by themselves, their cumulative effect "must have unfairly preju-diced the jury against the defendant." (Appellant's Br. at 10) As we found no error in the Fouche rape testimony, this claim fails.