## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2015, 8:20 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| William Byer, Jr.<br>Byer & Byer<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Jodi Kathryn Stein<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David L. Lewicki,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 4, 2015.<br><br>Court of Appeals Case No.<br>48A04-1501-CR-30<br><br>Appeal from the Madison Circuit Court.<br>The Honorable David A. Happe, Judge.<br>Cause No. 48C04-1112-FA-2274 |

**Shepard, Senior Judge**

[1] David Lewicki appeals from his convictions after a jury trial of one count of Class A felony attempted robbery,[1] and one count of Class B felony attempted robbery.[2] We affirm.

## Issues

[2] Lewicki presents the following issues for our review:

    I.     Whether the admission of Lewicki's statement to police was erroneous;

    II.    Whether the trial court properly instructed the jury on accomplice liability after a question arose during deliberations; and

    III.   Whether Lewicki's trial counsel was ineffective by failing to object to evidence and argument about Lewicki's co-perpetrators' convictions.

## Facts and Procedural History

[3] Very late on the evening of December 5, 2011, Lewicki, his girlfriend Brittany Wellman, his friend Steven Browning, and Browning's girlfriend Jennifer Sprinkle, needed gas money and devised a plan to get some from Humberto Pelayo, an acquaintance of Wellman. Lewicki drove the group to Pelayo's trailer in Elwood, where the women lured him to the car with the ruse that they were going to buy marijuana. Browning, who was agitated that Pelayo had sex with Sprinkle in the trailer before leaving, told Lewicki that they would tell

---

[1] Ind. Code § 35-42-5-1 (1984) (robbery serious bodily injury); Ind. Code § 35-41-5-1 (1977) (attempt).

[2] Ind. Code § 35-42-5-1 (robbery armed with deadly weapon); Ind. Code § 35-41-5-1 (attempt).

Pelayo about buying marijuana, but would instead drive him to a remote spot in the country and leave him stranded after stealing his money.

[4] Following Browning's directions, Lewicki drove the group to a pig farm and parked between a shed and the residence. After Lewicki ordered the frightened Pelayo out of the car, Browning and Sprinkle began to beat the victim. Browning was hitting Pelayo in the head with a machete Lewicki had previously seen in the car when Lewicki approached and grabbed Pelayo's hand demanding all of his money. At that point, Lewicki received a deep cut to his forearm, which began bleeding heavily. He retreated to the car.

[5] Despite Pelayo's severe injuries including large gashes to his scalp, he walked to a residence to ask for help, leaving a significant amount of blood on the porch and doorbell, but no one answered. A passerby telephoned for help after seeing Pelayo along the roadway.

[6] The four perpetrators sped away with Wellman at the wheel. As she drove the group to St. Vincent Mercy Hospital, Browning and Sprinkle came up with stories Lewicki could use to explain his injury. Around 2 a.m., Elwood Police Detective Nicholas Oldham was leaving the hospital on an unrelated matter when he encountered Wellman and Lewicki in the parking lot. Asked what happened, Lewicki claimed he did not remember, and Wellman said Lewicki had been in a fight in the country and been robbed. Lewicki's story later changed when he told Madison County Sheriff's Deputy Juan Galan that while

driving down a country road with Wellman they encountered two men fighting and Lewicki was injured trying to stop the fight.

[7] At that point officers considered Lewicki a victim and the three others witnesses. They interviewed Browning and Sprinkle. All four stories conflicted. Browning's and Sprinkle's clothing was stained with blood and dirt, and their hands showed blood and abrasions.

[8] Meanwhile, responding to a dispatch, two officers encountered Pelayo walking along the roadside, with deep lacerations to his scalp and the hood of his jacket saturated in blood. His money was still in an interior pocket of his jacket. Transported to St. Vincent Mercy, Pelayo told Deputy Galan that a girl he knew had asked him for money, that he had left with her and others, after which he was grabbed by the throat and attacked with a knife. Pelayo recalled seeing the image of a pig on the side of a building during the attack.

[9] Gary Davis, who owned the residence Pelayo had approached seeking help, called in to report the blood on his porch. When officers responded to Davis's residence and the spot where Pelayo was found, they managed to locate the building at the pig farm where Pelayo was attacked. Officers recovered Pelayo's shoes and hat, and Sprinkle's purse in the grass. Despite rainy conditions, the gravel driveway showed fresh tire tracks.

[10] As Lewicki's deep laceration was being sutured, the doctor was notified that a patient with severe head trauma had been admitted. Lewicki, who until that point had been reluctant to explain his injury to the doctor and was generally

uncommunicative, immediately became interested in the new patient, repeatedly inquiring if he was "still alive." Tr. p. 450. Lewicki was initially given a low dose of Morphine and later a low dose of Dilaudid because he was still in pain. Lewicki did not display any adverse reactions to the medication and spoke clearly with his doctor.

[11] Pelayo suffered three very large lacerations to his scalp, bleeding on his brain, a dislocated right shoulder, and a punch-like laceration to his left groin. His depressed skull fracture was indicative of a brain injury. He continues to experience a lot of head pain and sometimes has difficulty thinking clearly.

[12] Police searched Sprinkle's vehicle after obtaining her consent. They found the machete on the front passenger floorboard where Browning had been seated on the way to the hospital. A smaller green-handled folding knife, with its blade extended, was located in the back seat where Lewicki had sat. Cell phones owned by Sprinkle, Browning, and Wellman were located in the car; Pelayo's cell phone was found in Sprinkle's possession. DNA testing of various items, including the machete, the smaller knife, Browning's clothing, and Lewicki's clothing, revealed evidence connecting Pelayo with Browning and Lewicki.

[13] After Lewicki was discharged from the hospital, he was transported to the Elwood Police Department, where he waived his *Miranda* rights and gave a recorded statement admitting he knew of the plan to rob Pelayo. The State charged Lewicki with attempted robbery causing serious bodily injury, attempted robbery using a deadly weapon, and being an habitual offender. A

jury found Lewicki guilty as charged, and the court imposed an aggregate sentence of sixty-five years.

# Discussion and Decision

## I. Admission of Statement

[14] Lewicki has argued that his recorded statements to police were not voluntary because he had received pain medication at the hospital and had been crying while being treated. The trial court rejected this involuntary intoxication argument, concluding that although Lewicki appeared to be visibly in pain and his speech was affected by the medications, he was able to quickly and coherently relay detailed information involving sequences, names, and locations of events, answered open-ended questions in narrative form, and was able to understand the waiver form.

[15] We review a trial court's decisions about admission of evidence for abuse of discretion. *Lewis v. State*, 34 N.E.3d 240 (Ind. 2015). Protection against police misconduct is the principle behind ensuring that statements are voluntary. *Page v. State*, 689 N.E.2d 707 (Ind. 1997). A confession is voluntary if in light of the totality of the circumstances it is the product of "a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Scalissi v. State*, 759 N.E.2d 618, 621 (Ind. 2001). "The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence." *Page*, 689 N.E.2d at 711.

[16] There is no evidence that Lewicki's statements were induced by police misconduct. Circumstances like intoxication and lack of sleep may be factors to consider in determining voluntariness, but a finding of "coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *Scalissi*, 759 N.E.2d at 621. The trial court considered the impact of the medication on Lewicki's ability to communicate and found that his statement was voluntary, and thus admissible. Given the evidence, we cannot conclude that this was an abuse of discretion.

## II. Supplementary Instruction During Deliberations

[17] Lewicki argues the trial court erred by giving an accomplice liability instruction after the jury submitted a question during deliberations. The jury asked, "Regarding Count II, does the defendant need to be aware of the deadly weapon to be considered guilty of aiding, inducing or causing the commission of Robbery by means of a Deadly Weapon?" Tr. p. 641. After consulting with counsel, the court concluded that the instructions as a whole were incomplete and that "there is a gap there, which has led to the question." *Id.*

[18] The court drafted an additional instruction, which was given as follows:

> In order to find the defendant guilty of Count II, it is not
> necessary that the State prove that the defendant knew of the use
> of a deadly weapon. If you find beyond a reasonable doubt that
> the defendant knowingly or intentionally aided, induced or
> caused the robbery committed by another, and that the use of the

deadly weapon was the natural and probable consequence of that offense, you may find the defendant guilty of Count II.

*Id.* at 642.

[19] At trial, Lewicki's counsel agreed that "it most probably is correct on the law," and he was going to "make a record objection" to the supplementary instruction. *Id.* at 643. The trial court sought to clarify what counsel meant by a record objection inquiring, "Just so I'm clear, you're not objecting that it's not an accurate statement of the law, you're simply objecting that procedurally we shouldn't be giving additional instructions at this point?" *Id.* Counsel responded, "That is correct, the second option there, Judge." *Id.*

[20] Now on appeal, while conceding that in certain circumstances trial courts are permitted to give an omitted instruction, *see Jenkins v. State*, 424 N.E.2d 1002 (Ind. 1981), Lewicki claims that the supplementary instruction impermissibly expressed the trial court's view of the facts. When a defendant presents one argument at trial and a different argument on appeal, the claims are forfeited. *Lehman v. State*, 730 N.E.2d 701, 703 (Ind. 2000). So it is here.[3]

---

[3] Although Lewicki's appellate argument is not preserved, the record plainly establishes Lewicki's knowledge of the knives. Lewicki referred to Browning's machete, as "a big-ass knife" they called "cheese knife", which was located under the seat of the car. Exhibit Vol. I, p. 16. Lewicki testified that the presence of his DNA on the smaller green knife, which was found by police on the floor where Lewicki sat on the way to the hospital, was the result of his handling the knife on many prior occasions. Tr. p. 555.

## III. Ineffective Assistance of Trial Counsel

[21] Even though claims of ineffective assistance of trial counsel are permitted on direct appeal, a post-conviction proceeding typically is the method by which new facts not present in the trial record are developed with respect to that claim. *Jewell v. State*, 887 N.E.2d 939, 941-42 (Ind. 2008). Once that issue is raised on direct appeal, the question of ineffective assistance of counsel is foreclosed from being pursued again in post-conviction proceedings. *Id.* at 942.

[22] To establish a claim of ineffective assistance of trial counsel, a defendant must establish: (1) deficient performance; (2) that resulted in prejudice to the defense. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Trial counsel is afforded considerable discretion in the choice of strategy and tactics, to which we accord deference. *Id.*

[23] Lewicki claims that counsel was ineffective for failing to object to evidence offered by the State of sentencing orders and judgments of conviction of Browning, Wellman, and Sprinkle. Although that evidence is normally not admissible to establish a defendant's guilt, the lack of objection makes sense in terms of the overall trial strategy. Lewicki maintained that he was aware of the plan, but attempted to help Pelayo. He claimed that the others were the real perpetrators. Evidence of the co-perpetrators' convictions furthered that strategy, and it was not unreasonable to pursue it.

## Conclusion

[24] In light of the foregoing, we affirm the judgment of the trial court.

Affirmed.

Baker, J., and Bailey, J., concur.