## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan D. Harwell
Harwell Legal Counsel Ltd.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald Richardson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 31, 2017<br><br>Court of Appeals Case No.<br>49A05-1612-CR-2671<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Sheila A. Carlisle, Judge<br><br>Trial Court Cause No.<br>49G03-1405-FA-27638 |

**Kirsch, Judge.**

[1]    Donald Richardson appeals his convictions and sentences for Class A felony criminal deviate conduct,[1] Class A felony rape,[2] Class B felony carjacking,[3] and his adjudication as a habitual offender.[4]  He raises the following two restated issues:

> I.  Whether it was error for the trial court to admit into evidence statements that Richardson made during a police interview; and

> II.  Whether his seventy-year aggregate sentence is inappropriate.[5]

[2]    We affirm Richardson's convictions and sentences, and we remand with instructions for the trial court to clarify its Sentencing Order.

---

[1] *See* Ind. Code § 35-42-4-2(a)(1). We note that the statutes under which Richardson was charged were amended effective July 1, 2014.  However, he committed his offenses in August 2013, and we apply the statutes in effect at that time.

[2] *See* Ind. Code § 35-42-4-1(a)(1).

[3] *See* Ind. Code § 35-42-5-2(1).

[4] *See* Ind. Code § 35-50-2-8.

[5] Both parties state that the aggregate sentence imposed in this case was 100 years.  *Appellant's Br*. at 6, 14; *Appellee's Br*. at 13.  However, the transcript states that he was sentenced to forty years for criminal deviate conduct, forty years for rape, enhanced by thirty years, "which makes a 70-year sentence total on the rape," and ten years for carjacking, with the sentences to be served concurrently.  *Tr. Vol. 4* at 3-4.  The abstract of judgment likewise reflects that he was sentenced to seventy years for the rape conviction and, as to the habitual offender enhancement, the abstract states, "The total sentence listed above also included the [30 year] enhancement time."  *Confid. App*. at 113-114.  Thus, the record before us reflects that the thirty-year enhancement was included in – not in addition to – the seventy-year sentence.  We observe, however, that the trial court's Sentencing Order reflects that Richardson received seventy years on the Count IV rape conviction and then states, "Defendant found to be a Habitual Offender.  Court enhances sentence on count 4 by 30 years."  *Id*. at 115.  To the extent that this suggests that the seventy-year sentence was enhanced by thirty years, we find that this was a scrivener's error, or at a minimum, is unclear.  We thus remand to the trial court for the limited purpose of clarifying its written Sentencing Order.

## Facts and Procedural History

[3] Sometime after midnight on August 21, 2013, C.B. drove herself and her three-month-old child to an apartment complex to see the child's father. She and her child were in the parked car in the parking lot, when a stranger, later determined to be Richardson, knocked on her driver's side window with a handgun. At his direction, she opened the door, and he waved the handgun in her face and told her to move over. She moved to the passenger seat, and he drove the car to another parking lot, where he forced her to perform fellatio and have intercourse, as he held a gun to her. He then exited the car and ran away. C.B. drove to a nearby Meijer store and contacted police.

[4] An Indianapolis Metropolitan Police Department ("IMPD") officer arrived at the Meijer store, where he encountered C.B., who was frantic and naked from the waist down. Detective Vincent Harper ("Detective Harper") was called to the scene to assist. Detective Harper took C.B. to the hospital, and DNA evidence obtained through a sexual assault examination identified Richardson as a suspect. Detective Harper later interviewed C.B., and she identified Richardson from a photo array.

[5] In May 2014, Richardson was arrested, advised of his rights, orally and in writing, and he waived them. During his police interview, he made statements implicating his involvement with the crimes committed against C.B. He told the officers that he had previously been in a car accident and sometimes had trouble remembering things and that he had been diagnosed with manic depression.

[6] The State charged Richardson with nine counts: Class A felony kidnapping, two counts of Class A felony criminal deviate conduct, two counts of Class A felony rape, Class C felony sexual battery, Class B felony carjacking, Class B felony criminal confinement, and Class C felony intimidation. *Appellant's App.* at 27. The State added a habitual offender charge.

[7] In April 2016, Richardson filed a Motion to Exclude Unreliable Statements by Defendant ("Motion to Exclude"), asserting that his statements to police were involuntary, unreliable, and unduly prejudicial. At the hearing, Richardson presented medical records to show that in January 2014 he had been in a car accident and was diagnosed with a concussion. *Defendant's Exs.* A, B. He testified that the concussion caused symptoms of vertigo, nausea, memory loss, confusion, and headaches. He stated that, prior to the accident, he had been diagnosed with manic depression. He also testified that prior to the accident he had been abusing alcohol and drugs and that, after the accident, his substance abuse worsened. Richardson testified that he had consumed alcohol, Xanax, and marijuana throughout the day prior to going to the police station for questioning. Richardson also presented the testimony of his mother, who testified that Richardson was taken into custody before he could attend his follow-up appointments for the head injury that he received in the January 2014 car accident and that she saw Richardson not long before he was picked up by police, and he appeared intoxicated to her. Richardson also presented the testimony of his cousin, who testified to drinking alcohol, "taking a few little

pills," and smoking marijuana with Richardson throughout the day before Richardson was taken into custody for questioning. *Tr. Vol. 2* at 46.

[8] The State presented the testimony of Detective Harper about his videotaped May 2014 interview with Richardson, which recording was later provided to the trial court as an attachment to the State's proposed findings of fact and conclusions of law. The trial court denied the Motion to Exclude, finding:

> *The Court **does** find* that under the totality of the circumstances: the Defendant was properly advised of his Miranda warnings, knowingly waived his constitutional rights and gave a voluntary statement to the police. The Court **does not** *find* from the evidence that the Defendant was so intoxicated OR mentally or physically impaired as to impede the voluntariness of his statement. Further, the Court **does not** *find* from the evidence that there was any coercion by the police officers which made the statement involuntary. Under a Rule 403 analysis, the statement is admissible, relevant and highly probative. It is not <u>unfairly</u> prejudicial.

*Appellant's App.* at 78 (emphasis in original). The trial court subsequently denied Richardson's request to certify the trial court's order for interlocutory appeal.

[9] At the two-day August 2016 jury trial, the trial court admitted testimony from Detective Harper, over Richardson's objection, concerning statements that Richardson had made during the videotaped interview. Detective Harper testified that Richardson accurately described C.B.'s physical build, as well as the car she was driving. Richardson recognized C.B. in a BMV photo and told

the officers, "I did her." *Tr. Vol. 3* at 117; *State's Ex.* 2. He stated that he was sorry and that C.B. "didn't deserve that." *Tr. Vol. 3* at 118. Detective Harper testified that Richardson told him during the interview that he had been in a car accident, suffered a concussion, and had trouble remembering things. Detective Harper stated that Richardson did not tell him that he had been consuming alcohol or drugs, and Detective Harper did not detect any signs of impairment.

[10] The jury found Richardson guilty of four counts: Count II, Class A felony criminal deviate conduct; Count IV, Class A felony rape; Count VI, Class C felony sexual battery; and Count VII, Class B felony carjacking. *Tr. Vol. 3* at 192-93. The jury also adjudicated Richardson to be a habitual offender. At the September 2016 sentencing hearing, Richardson agreed that the PSI was accurate, and he presented no other evidence. The PSI showed that he had been arrested seven times since 2003 and had at least six prior felony convictions and one misdemeanor conviction. His felony convictions included: Class C felony intimidation; Class B felony robbery; Class B felony criminal confinement; and three convictions for Class A felony sexual misconduct with a minor. The PSI also showed that, while serving time at the Department of Correction, he was disciplined four times. The trial court noted the "escalation of violence" and that his offenses involved "confronting other people," including two young females. *Tr. Vol. 4* at 3. The trial court gave "minimal or medium weight" to Richardson's proffered mitigating circumstances and found that the aggravating circumstances outweighed the mitigating circumstances. *Id.*

Based on double jeopardy considerations, the trial court sentenced Richardson on Counts II, IV, and VII, but not on Count VI, the sexual battery conviction. It sentenced Richardson to: forty years for the Class A felony criminal deviate conduct conviction; forty years for the Class A felony rape conviction, enhanced by thirty years for the habitual offender adjudication; and ten years on the Class B felony carjacking conviction. It ordered that those sentences run concurrent with one another, for a total of seventy, but ordered that they be served consecutive to the sentence imposed in another cause. Following the trial court's denial of his motion to correct error, Richardson now appeals.

## Discussion and Decision

## I. Admission of Evidence

Before trial, Richardson filed the Motion to Exclude his statements to Detective Harper as being involuntarily made in violation of his constitutional rights. The trial court denied the motion, and, at trial, over Richardson's objection, the State introduced Detective Harper's testimony about his interview with Richardson. On appeal, Richardson contends that the trial court committed reversible error when it admitted into evidence his statements to police, asserting that all his statements were elicited in violation of his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and his rights under Article I §§ 12, 13, and 14 of the Indiana Constitution. That is, he maintains they were not voluntary and should have been excluded.

[13] Protection against police misconduct is the principle behind ensuring that statements are voluntary. *Page v. State,* 689 N.E.2d 707, 710 (Ind. 1997). In reviewing a claim that a defendant's statement or confession was involuntary, the State, under Indiana law, has the burden to prove beyond a reasonable doubt that the statement was voluntary. *Weisheit v. State*, 26 N.E.3d 3, 18 (Ind. 2015), *cert. denied*, 136 S. Ct. 901 (2016). Our Supreme Court has explained what the trial court is to consider:

> In evaluating a claim that a statement was not given voluntarily, the trial court is to consider the "totality of the circumstances," including any element of police coercion; the length, location, and continuity of the interrogation; and the maturity, education, physical condition, and mental health of the defendant. To determine that a statement was given voluntarily, the court must conclude that inducement, threats, violence, or other improper influences did not overcome the defendant's free will.

*Wilkes v. State*, 917 N.E.2d 675, 680 (Ind. 2009) (internal citations omitted). Intoxication, drug use, and mental illness are factors to be considered in determining whether a statement is voluntary. *State v. Banks*, 2 N.E.3d 71, 80 (Ind. Ct. App. 2013), *trans. denied*; *see also Scalissi v. State,* 759 N.E.2d 618, 621 (Ind. 2001) (factors such as intoxication and lack of sleep may be factors in determining voluntariness).[6]

---

[6] Richardson asserts that the Indiana Constitution does not require police coercion in order for a confession to be deemed involuntary. *Appellant's Br*. at 10 (citing *State v. Banks*, 2 N.E.3d 71, 82-83 (Ind. Ct. App. 2013), *trans. denied*). The State, however, maintains "that police coercion is required to show involuntariness under the Indiana Constitution." *Appellee's Br*. at 15 n.1. Assuming without deciding that Richardson is correct, we

[14] On appeal, the trial court's determination of voluntariness is reviewed as a sufficiency of the evidence question. *Weisheit*, 26 N.E.3d at 18. We will not reweigh the evidence. *Id.* If the trial court's finding of voluntariness is supported by substantial evidence, we will affirm. *Id.; see also Scalissi*, 759 N.E.2d at 621 ("When reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence, but instead examine the record for substantial, probative evidence of voluntariness.").

[15] Here, Richardson contends that, even though he signed a waiver of his rights after receiving oral and written advisements, the State did not meet its burden of proving that his confession was voluntary, intelligent, and freely made because he presented evidence that he incurred previous head trauma, namely a concussion in January 2014, he suffered from manic depression, and he had been ingesting alcohol and marijuana on the day in question.

[16] Richardson asserts that his "substantial intoxication [] overcame any voluntariness" and that he did not provide a voluntary statement to Detective Harper. *Appellant's Br*. at 11. According to our Supreme Court, "The mere fact a statement is made by the defendant while under the influence of drugs, or that the defendant is mentally ill, does not render it inadmissible per se." *Pruitt v. State,* 834 N.E.2d 90, 115 (Ind. 2005). If voluntariness of a statement is

find that Richardson's statement was voluntarily given based on the totality of circumstances, and we do not reach or resolve the parties' disagreement over whether police coercion must be present under the Indiana Constitution.

challenged on the basis that the defendant was under the influence of drugs, the defendant has the burden to introduce evidence from which it could be concluded that the amount and nature of the drug consumed would produce an involuntary statement. *Id.* "A confession may be inadmissible if the defendant was so intoxicated or impaired as to be unconscious of what he was doing or in a state of mania." *Owens v. State,* 754 N.E.2d 927, 929 (Ind. 2001). Anything less goes to the weight given to the confession, not to its admissibility. *Id.*

[17] Here, Richardson testified at the Motion to Exclude hearing that, on the day he was arrested, he had smoked five "blunts" of marijuana and had consumed up to a fifth of alcohol. *Tr. Vol. 2* at 22. He described that, at the time that he was questioned, he was not "sloppy" drunk, but was more of a "middle" type of drunk, suggesting he was a six on a scale of one to ten. *Id.* Detective Harper, who had been employed with IMPD for fourteen years and, among other things, was trained as a drug recognition expert and had experience detecting impaired and intoxicated individuals, testified that Richardson showed no signs of intoxication or impairment and that Richardson did not smell like alcohol or marijuana. We will not reweigh evidence or judge witness credibility. *Weisheit*, 26 N.E.3d at 18. Richardson has failed to show that his alleged intoxication rendered his statement involuntary.

[18] Richardson's assertions with regard to mental illness are that, at some point prior to the January 2014 car accident, he had been diagnosed as having manic depression. The only evidence admitted at trial regarding that illness was Richardson's testimony and that of his mother. Richardson did not present any

other evidence regarding medical diagnosis, treatment, or in any way establishing that his depression caused or contributed to his actions or affected his statements to police. We thus reject his claims that any mental illness in the form of manic depression rendered his statements to police involuntary. With regard to head trauma, Richardson presented medical records showing that he suffered a concussion in an accident in January 2014, and he testified that, as a result of the concussion, he experiences symptoms of memory loss, confusion, headaches, nausea, and vertigo. Detective Harper did not observe any such symptoms during the interview, and while Richardson told Detective Harper during the interview that the car accident had affected his memory, Richardson accurately described to police C.B.'s build and her vehicle. Detective Harper also stated that Richardson exhibited a cohesive thought process. There was thus no evidence if or how the concussion affected Richardson's statements to police. Based on the record before us, we find that there was substantial evidence demonstrating the voluntariness of Richardson's statement, and the trial court did not err when it admitted it into evidence.

[19] Richardson alternatively argues that, even if the State met their burden to show that the statement was voluntary, his mental condition rendered it "unreliable and inadmissible," and its prejudicial effect outweighed its probative value under Evidence Rule 403. *Appellant's Br*. at 13. He urges, "An alleged confession obtained while intoxicated, mentally ill, and suffering from a brain injury is not a confession of such reliability it should be before a jury." *Id*. Other than citation to general caselaw concerning the persuasive effect of

confessions on factfinders and regarding their admission generally, Richardson provides no authority in support of his position that the particular circumstances of his statement rendered it inadmissible under Rule 403, and therefore, he has waived the argument for appellate review.  Ind. Appellate Rule 46(A)(8).  Furthermore, having rejected his argument that his alleged intoxication, mental illness, and concussion rendered his confession involuntary, we likewise are not persuaded, based on the record before us, that his statement was unreliable and unduly prejudicial.  The trial court did not err by admitting into evidence Richardson's statements to police.[7]

## II.  Sentence

[20]    Richardson claims that his sentence is inappropriate.  This court has authority to revise a sentence 'if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'"  *Delao v. State*, 940 N.E.2d 849, 853 (Ind. Ct. App. 2011) (quoting Ind. Appellate Rule 7(B)), *trans. denied*.  A defendant bears the burden of showing that both prongs of the inquiry favor revision of his or her sentence.  *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*.  We understand and recognize the unique perspective a trial court brings to its sentencing decisions.  *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct.

---

[7] The State notes that C.B. testified to the events in question, she identified Richardson in a line-up, and his DNA was found on her person and clothes.  Thus, his inculpatory statement to police, conceding that "I did her" was established by other evidence.  We agree.

App. 2007). The trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[21] Regarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Id.* at 1081. Richardson was found guilty and sentenced on one count of Class A felony criminal deviate conduct; one count of Class A felony rape; and one count of Class B felony carjacking, and he was adjudicated to be a habitual offender. *Tr. Vol. 3* at 192-93; *Confid. App.* at 21, 82-91. A Class A felony conviction carries a sentence of twenty to fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. A Class B felony conviction carries a sentence of six to twenty years with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Here, the trial court sentenced Richardson to forty years for the Class A felony criminal deviate conduct conviction; forty years for the Class A felony rape conviction, enhanced by thirty years for the habitual offender adjudication, for a total of seventy years on the rape conviction; and ten years on the Class B felony carjacking. It ordered those sentences to run concurrent with one another. Richardson claims that his sentence was inappropriate.

[22] Richardson concedes that the nature of the offense is "a negative consideration," but argues that "based on the lack of physical injury and based on the jury's rejection of all weapon counts, [] the nature of this offense is not as bad or as violent as many similarly situated cases." *Appellant's Br.* at 15. We

disagree. The facts of the offense are that Richardson tapped on the window of the car, as C.B. sat in the car with her infant child. He directed her to open the door and gestured with the gun, waving it in her face, instructing her to move over so he could drive the car to another location, where he forced her to perform fellatio and intercourse, while holding a gun to her. C.B. testified that her infant child was crying, and Richardson yelled at her to shut up the child or else he would "shoot the shit out of [C.B.]." *Tr. Vol. 2*. at 133. Richardson, before exiting the car, asked C.B. if she knew that "this is rape" and said that if the police came he would kill her. *Id*. at 137. Richardson terrorized C.B. in the presence of her infant child, who, for at least part of the time, was crying. C.B. feared that she or her child was going to die. Richardson has failed to establish that the nature of the offense supports a revision of his sentence.

[23] Regarding the character of the defendant inquiry, one relevant inquiry is the defendant's criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. Richardson's criminal history began in 2003 at the age of sixteen. It includes felony convictions for intimidation, robbery, sexual misconduct with a minor, and criminal confinement. His criminal history reflects escalating violent criminal conduct. He committed the rape against C.B. in August 2013, which was about four months after he sexually assaulted a sixteen-year-old girl at knifepoint. *Confid. App*. at 97. In addition, while at the DOC, Richardson was disciplined twice for unauthorized possession, destruction, or alteration of State property; he had a conduct violation for disruptive, unruly, rowdy conduct for fleeing or physically resisting staff; and a

conduct violation for committing battery without weapon or injury. He also violated probation. Richardson's history reflects sexually predatory behavior and a disrespect for authority.

[24] With regard to his character, Richardson urges that he is needed by family, that he was employed at the time of the offense, and he was only a few credits short of graduating from college. He also argues that his mental illness, brain trauma, and drug use are factors to be considered in evaluating his character. He argues that his personal accomplishments and his mental impairment "should have been given greater consideration." *Appellant's Br.* at 16. The State maintains that the only evidence of mental illness was Richardson's own testimony and that of his mother that he had been diagnosed at some point with manic depression, and that the evidence of his brain trauma was medical records that he suffered a concussion in a January 2014 auto accident, which was five or six months after the attack on C.B. The evidence from Richardson and his mother was that he was undergoing testing for headaches, dizziness, fainting, and memory loss, but did not get an opportunity to attend the follow-up appointments because he was arrested. There was no evidence in the record suggesting that mental illness or brain injury had any connection to his criminal conduct. We find that Richardson has failed to show that his character warrants a revision of his sentence.

[25] The question before us is not whether another sentence is more appropriate; instead, the question is whether the sentence imposed is inappropriate. *Marley v. State*, 17 N.E.3d 335, 339 (Ind. Ct. App. 2014), *trans. denied*. We cannot say

that the trial court's imposition of a seventy-year aggregate sentence was inappropriate.

[26] Affirmed and remanded for clarification of Sentencing Order.

[27] Mathias, J., and Altice, J., concur.